UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATRIUM CORPORATE CAPITAL LIMITED, One of the capital providers for Lloyd's of London Syndicate 609, the sole Lloyd's Syndicate Subscribing to Lloyd's Policy No. ATR/MC/624974, <br><br> Plaintiff, <br><br> v. <br><br> LOWS POINT, LLC, <br><br> Defendant. | Case No. 1:23-cv-1279 |

## PLAINTIFF'S COMPLAINT

Now Comes Plaintiff, Atrium Corporate Capital Limited ("Atrium"), one of the capital providers for Lloyd's of London Syndicate 609, the sole Lloyd's Syndicate subscribing to Lloyd's policy number ATR/MC/624974, by and through its attorneys, and for its Complaint against Defendant, Lows Point, LLC, alleges as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

2. Atrium seeks a determination of the parties' rights and obligations under an insurance policy subscribed to by Atrium in its capacity as a capital provider, or "Name", to the insurance policy issued to Defendant, Lows Point, LLC ("Defendant" or "Insured") for the property located at 708 Lincolnway, LaPorte, IN 46350 (the "Insured Property"), Policy No.

ATR/MC/624974 for the period of June 4, 2022 to June 4, 2023 (the "Policy"). A true and correct copy of the Policy is attached here as Exhibit A.

3. A dispute exists regarding whether Atrium is obligated under the terms and conditions of the Policy to pay the loss resulting from a sudden collapse of a significant portion of the Insured Property on or about October 27, 2022.

3. Atrium seeks a declaration that there is no coverage under the Policy because the sudden collapse at the Insured Property does not satisfy any of the circumstances in which the Policy provides coverage for collapse and that Atrium properly declined to provide coverage for the claim presented by the Insured.

## PARTIES

4. Plaintiff Atrium is one of the capital providers, or "Names", for Lloyd's of London Syndicate 609, the sole Lloyd's syndicate subscribing to Policy number ATR/MC/624974 (the "Policy")[1]. Atrium maintained a 25.3% interest in Syndicate 609 for the 2022 underwriting year (the applicable year of account for purposes of the Policy), and, as a result, had the same percentage interest in the Policy. Atrium is a private limited company organized under the laws of the United Kingdom with its principal place of business in the United Kingdom. Therefore, Atrium is a citizen of the United Kingdom.

5. The Policy's building limits are $800,000. Thus, Atrium's potential liability for this claim, which would be 25.3% of the possible coverage available, is in excess of the $75,000 requirement for diversity jurisdiction.

6. By virtue of the provisions in the Service of Suit Clause of the Policy, and by virtue of independent contracts between the other capital providers for Syndicate 609 and the managing

---

[1] The Policy is attached as Exhibit A.

agent responsible for managing Syndicate 609's affairs, the remaining capital providers of Syndicate 609 agreed to be bound by any judgment against Atrium by any court of competent jurisdiction in the United States. *See* Exhibit A, Certificate Provisions and Service of Suit Clause.

7. Defendant, Lows Point, LLC is the named insured under the Policy and its two members, Thomas Viere and Jack Cassin, are both residents of Chicago, Illinois. Thus, the citizenship of the Defendant is also in Illinois.

## STATEMENT OF JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 and 1332 because there is complete diversity of citizenship between Atrium, a UK citizen, and Defendant Lows Point, LLC, an Illinois citizen, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the because Defendant is a citizen of the Northern District of Illinois, its members reside in Illinois, and the Policy was delivered to Defendant within the Northern District of Illinois.

## BACKGROUND

10. Defendant purchased the Insured Property, which is a structure that dates to the 1800s, with a plan to redevelop it for mixed residential and commercial use.

11. The Insured retained Silver Creek Engineering to perform a structural engineering review of the Insured Property.

12. Silver Creek Engineering issued a report delivered to Thomas Viere on or about August 5, 2021, 10 months prior to the issuance of the Policy at issue in this matter.

13. Silver Creek Engineering identified a number of structural issues with the Insured Property and recommended numerous structural repairs that would be required at the Insured Property.

14. In one area in particular, the Insured Property's basement, Silver Creek Engineering indicated the brick foundation was not properly supporting the wall, which resulted in settlement and apparent structural issues.

15. The Insured developed architectural, mechanical and structural plans to renovate the Insured Property.

16. The Insured advised the City of LaPorte in an application for approval of the design that the only work that had been performed at the Insured Property was removal of personal property that remained, as well as general cleaning.

17. The Insured purchased the Insurance Policy, which provided $800,000 in property coverage for the Insured Property.

**THE POLICY**

18. The Policy's Commercial Property Building and Personal Property Coverage Form, CP 00 10 04 02, insuring agreement provides as follows:

> **A. Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

19. The Policy's Causes of Loss – Special Form, CP 10 30 04 02, provides, in relevant part, as follows:

**B.    Exclusions**

\* \* \* \*

**2.**    We will not pay for loss or damage caused by or resulting from any of the following:

\* \* \* \*

> **k.** Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

20.    The Policy's Causes of Loss – Special Form, CP 10 30 04 02, also provides, as follows:

> **D.    Additional Coverage – Collapse**
>
> The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.
>
> **1.**    With respect to buildings:
> **a.**    Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
> **b.**    A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
> **c.**    part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
> **d.**    A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
>
> **1.**    We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:
>
> **a.**    The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;
> **b.**    Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
> **c.**    Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
> **d.**    Weight of people or personal property;
> **e.**    Weight of rain that collects on a roof;

5

      **f.**    Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.,** we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a.** through **1.d.** do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in **2.a., 2.d.** and **2.e.**

## LOSS AND INVESTIGATION

21.    The Insured Property sustained a significant collapse of the front portion of the structure on the evening of October 27, 2022.

22.    The LaPorte Fire Department characterized the incident as a "building collapse."

23.    The LaPorte Police Department report indicated that "a building did appear to have caved in and collapsed."

24.    There was no rain or other precipitation on the day of the collapse, and therefore, there was no rain or snow on the Insured Property's roof at the time of the collapse.

25.    The Insured reported the claim to Atrium and the other subscribers to the Policy.

26.    Atrium and the other subscribers to the Policy appointed McLarens to serve as the independent adjuster and also retained Derek Craig of EFI Global to serve as an engineering expert.

27.    Mr. Craig and the assigned McLarens' adjuster, John Gier, inspected the Insured Property on October 29, 2022.

28.    Mr. Craig issued a report on November 4, 2022 with his analysis and findings regarding the Insured Property's collapse.

29.    Mr. Craig opined the collapse was the result of failure of the brick basement foundation system, which failed as a result of long-term degradation of the bricks and mortar.

30. Thomas Viere, one of the members of the Insured LLC, advised Mr. Craig that he had seen degradation in the brick foundation prior to the collapse on October 27, 2022.

31. Atrium and the other subscribers to the Policy issued a letter to the Insured, via McLarens, on November 8, 2022, reserving rights and requesting information.

32. The Insured provided documents and information to Atrium and the other subscribers to the Policy on December 19, 2022.

33. The documentation provided by the Insured included the Silver Creek Engineering report issued in August 2021, over a year prior to the collapse.

34. Atrium and the other subscribers to the Policy issued a letter, via McLarens, on February 10, 2023, declining coverage for the Insured Property collapse.

35. The Policy excludes coverage for collapse, but then adds additional coverage for collapse, but only if it is the result of one of a number of named perils.

36. The only possibly applicable collapse peril that may be relevant to the Insured Property collapse is if the collapse is caused by "decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse."

37. The investigation by Atrium and the other subscribers to the Policy determined that the collapse was the result of long-term degradation of the brick foundation, which could be characterized as a form of "decay."

38. The Insured was both aware of the brick foundation degradation and the brick foundation degradation was not hidden from view.

39. The Insured commissioned and was provided with a structural engineering analysis of the Insured Property in August 2021 by Silver Creek Engineering, which identified issues with the brick foundation and advised the Insured of those issues.

40. One of the two members of the Insured LLC, Thomas Viere, advised Mr. Craig on October 29, 2022, that he had seen the degradation of the brick foundation prior to the Insured Property's collapse.

41. Atrium and the other subscribers' investigation determined that the "decay" that caused the Insured Property collapse was neither hidden from view nor unknown to the Insured. Therefore, the Insured Property's collapse was not covered under the Policy's additional coverage for collapse and Atrium and the other subscribers to the Policy properly declined coverage for the Insured's claim.

42. Atrium, on its own behalf and not on behalf of any other individual or entity, seeks a determination in this action it properly declined coverage for the Insured's claim arising out of the October 27, 2022 collapse at the Insured Property.

## COUNT I
## DECLARATORY JUDGMENT

43. Plaintiff incorporates the foregoing paragraphs.

44. Plaintiff subscribed to the Policy issued to the Insured.

45. The Policy excludes coverage for collapse, but then added an Additional Coverage for collapse, which provides as follows:

> **D. Additional Coverage – Collapse**
>
> The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.
>
>     **1.** With respect to buildings:
>         **a.** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
>         **b.** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
>         **c.** part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

8

      **d.**      A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**2.**    We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

    **a.**    The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;
    **b.**    Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
    **c.**    Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;
    **d.**    Weight of people or personal property;
    **e.**    Weight of rain that collects on a roof;
    **f.**    Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.,** we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a.** through **1.d.** do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in **2.a., 2.d.** and **2.e.**

46.    Plaintiff's investigation determined the Insured Property's collapse was the result of long-term deterioration of the brick basement foundation.

47.    Plaintiff's investigation further determined both that the Insured's members were aware of this degradation and the degradation was not hidden from view.

48.    These facts do not fall within the Policy's named perils that provide coverage for collapse.

49.    Therefore, the Policy does not provide coverage for the collapse at the Insured Property.

50. Atrium properly declined coverage for the collapse at the Insured Property.

51. Atrium does not owe any coverage to the Insured for the damage to the Insured Property as a result of the collapse that occurred on October 27, 2022.

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in its favor and against Defendant and declare Plaintiff's denial of coverage for the damage to the Insured Property is in accordance with the Policy and applicable law and requests recovery of costs, attorney's fees where permitted, and any other relief to which it may be entitled.

Dated: March 1, 2023

                                                                         Respectfully submitted,

                                                                         By: /s/ Christopher J. Shannon
                                                                               One of Plaintiff's Attorneys

Christopher J. Shannon
WALKER WILCOX MATOUSEK LLP
One North Franklin Street
Suite 3200
Chicago, IL 60606
Tel: 312-244-6700
Fax: 312-244-6800
cshannon@walkerwilcox.com